**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**OHSERASE MANUFACTURING LLC,**

                                        **Plaintiff,**

    **vs.**                                                          **8:25-CV-1073**
                                                                        **(MAD/PJE)**

**AIGER GROUP AG SWITZERLAND,**
*d/b/a* **AIGER ENGINEERING LTD.,**

                                        **Defendant.**

---

**APPEARANCES:**                                    **OF COUNSEL:**

**RUPP PFALZGRAF LLC**                              **JAMES J. GRABER, ESQ.**
1600 Liberty Building                               **JACK E. GRANT, ESQ.**
424 Main Street
Buffalo, New York 14202
Attorneys for Plaintiff

**HACKER MURPHY LLP**                               **THOMAS J. HIGGS, ESQ.**
28 Second Street                                    **BENJAMIN F. NEIDL, ESQ.**
Troy, New York 12180
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Ohserase Manufacturing LLC ("Plaintiff") commenced this action on August 11, 2025,

*see* Dkt. No. 1, and filed proof of service on September 17, 2025, *see* Dkt. No. 7.  On September

30, 2025, Aiger Group AG Switzerland ("Defendant") filed a motion to dismiss for improper

service and a lack of personal jurisdiction over Aiger Engineering Ltd., which Defendant

contends is erroneously listed by Plaintiff as its "doing business as" name.  *See* Dkt. No. 8.

Plaintiff opposed the motion on October 21, 2025, and simultaneously cross-moved for an

extension of time to re-serve Defendant or permission to serve either: (1) Defendant's overseas representatives via email; or (2) Defendant's United States-based counsel. *See* Dkt. No. 12. Defendant filed a reply in further support of its motion, and in opposition to Plaintiff's cross-motion, on October 28, 2025. *See* Dkt. No. 14.

Defendant's motion and Plaintiff's cross-motion are now before the Court. For the reasons stated herein, Defendant's motion is granted, and Plaintiff's motion is denied.

## II. BACKGROUND

Plaintiff, a cigarette manufacturer based in Akwesasne, New York, alleges that Defendant breached an agreement to provide Plaintiff with two cigarette packing machines. *See* Dkt. No. 1 at ¶¶ 4, 7-16, 28; Dkt. No. 5. According to Plaintiff's complaint, Defendant is a "Swiss business entity with its headquarters and principal place of business in Bulgaria[,]" which designs, manufactures, and sells industrial packaging machinery. Dkt. No. 1 at ¶¶ 5-6. As outlined below, Defendant disputes Plaintiff's characterization of Defendant's location and relationship to other corporate entities.

### A.    The Parties' Agreement

Because the parties' motion papers concern service of process and personal jurisdiction, the Court provides only a broad overview of the contract dispute underpinning this action. The parties entered their agreement in or around January 2023, *see* Dkt. No. 1 at ¶¶ 7, 9; Dkt. No. 5, and Defendant allegedly missed delivery deadlines by up to ten months, *see* Dkt. No. 1 at ¶ 17. Plaintiff claims the delays forced it to take costly mitigation measures, including paying more than $23,000 in overtime wages to its employees. *See id.* at ¶¶ 19, 21-22. After the machines were delivered and started operating "in mid-to-late 2024," *id.* at ¶ 24, their component parts started breaking, *see id.* at ¶ 26. Because of these "constant malfunctions," Defendant allegedly

kept its installation team at Plaintiff's facility long term and "feebl[y]" attempted to repair the machines. *Id.* at ¶¶ 31-34. Plaintiff claims it paid nearly $50,000 in hotel and vehicle rental costs for Defendant's employees. *See id.* at ¶ 35. Around November 25, 2024, Defendant allegedly recalled its repair team to Europe. *See id.* at ¶ 41. Plaintiff allegedly paid one of Defendant's employees $18,000 to stay in New York through mid-December 2024. *See id.* at ¶ 44.

In January 2025, Plaintiff sent Defendant a letter explaining the problems with the machines. *See id.* at ¶ 53. Defendant agreed to complete an "acceptance test" for the first machine by March 15, 2025, and the second machine by April 30, 2025. *Id.* at ¶ 54. However, Defendant allegedly missed those deadlines and misrepresented the test results to overstate the machines' capabilities. *See id.* at ¶¶ 55-57. On July 9, 2025, Defendant's chief executive officer sent Plaintiff an email purportedly attempting to renounce Defendant's contractual obligations. *See id.* at ¶¶ 58-64. Thereafter, on August 5, 2025, Defendant allegedly "threw up its hands and deserted the project altogether, leaving [P]laintiff nearly $3 million in the hole and with two machines that are better suited as coat racks than packing machines." *Id.* at ¶ 74. The complaint enumerates three causes of action: (1) breach of contract; (2) unjust enrichment; and (3) fraudulent misrepresentation. *See id.* at ¶¶ 77-100.

**B.      Service of Process**

Plaintiff filed an affidavit of service on September 17, 2025. *See* Dkt. No. 7. The affidavit affirms service of the summons on an individual named Christopher Franklin at 608 Island Pointe Lane in Moneta, Virginia. *See id.* The affidavit identifies Franklin as an "officer of Aiger" and specifies the Virginia address as a "[h]ome." *Id.*

In arguing that service was improper, Defendant states that Franklin has never worked for Aiger Group AG Switzerland or Aiger Engineering Ltd. *See* Dkt. No. 8-10 at 7. Rather,

3

according to Defendant, Franklin is a former employee of Aiger USA LLC, "a Pennsylvania limited liability company that the Aiger family of companies formed in 2008." *Id.* Defendant states that Franklin worked as a sales associate for Aiger USA until September 2021, four years before the attempted service of process in this action, and Aiger USA shut down in December 2023. *See id.* With its papers, Defendant submits Franklin's separation report, *see* Dkt. No. 8-8 (indicating that Franklin's position was eliminated for budgetary reasons during the COVID-19 pandemic), and documents from the Pennsylvania Departments of State and Revenue showing Aiger USA's dissolution, *see* Dkt. No. 8-9 at 3-4.

Citing two different LinkedIn profiles and a public records search, Plaintiff contends that service was proper because Franklin "publicly held himself out as the head of 'Americas' operations for [D]efendant's enterprise, bearing the title 'Director – Americas, Aiger Engineering Ltd.[,]'" and was publicly listed as a "principal" of Aiger USA. Dkt. No. 12-3 at 4-5; *see* Dkt. No. 12-1 at ¶¶ 11-17. Plaintiff also states that it contacted Aiger USA "before it was known whether [D]efendant was represented by counsel," and the company "represented that Chris Franklin was still and [sic] employee of Aiger USA." Dkt. No. 12-1 at ¶ 16. Plaintiff submits a screenshot of Defendant's website showing a list of Aiger offices in Bulgaria, Pennsylvania, Thailand, and Switzerland, *see id.* at ¶ 11, but does not otherwise respond to Defendant's evidence that Aiger USA is no longer in operation.

Defendant distinguishes the three Aiger companies as follows: (1) Aiger Group AG Switzerland "is a holding company organized under the laws of Switzerland with a principal place of business in Baarerstrasse, Switzerland[,]" and is the actual defendant in this case; (2) Aiger Engineering Ltd. "is a Bulgarian limited company with a principal place of business in Plovdiv, Bulgaria[,]" is not an alternative trade name for Aiger Group AG Switzerland, and is therefore

4

inappropriately named in the case caption; and (3) Aiger USA, now defunct, was a separate but affiliated corporate entity based in the United States.  Dkt. No. 8-10 at 5, 7-8; *see* Dkt. No. 8-1 at ¶¶ 4-5, 9; Dkt. No. 8-5 at ¶¶ 5, 9-10, 13; Dkt. No. 8-9.

### III. DISCUSSION

**A.    Legal Standards**

#### 1. Insufficient Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  When a defendant moves to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), "the plaintiff bears the burden of proving the defendant was adequately served." *Sun v. Cuomo*, No. 1:19-CV-497, 2019 WL 5307359, *1 (N.D.N.Y. Oct. 21, 2019) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)); *see Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  "[T]he Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Safran Elecs. & Def. SAS v. Exail SAS*, 764 F. Supp. 3d 133, 139 (S.D.N.Y. 2025) (citation and internal quotation marks omitted).  "Actual notice of the action does not cure or waive a service defect." *Sun*, 2019 WL 5307359, at *1 (citing *Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 441 (S.D.N.Y. 2012)); *see Sartor v. Toussaint*, 70 Fed. Appx. 11, 13 (2d Cir. 2002) (summary order) (citations omitted).

Rule 4(h) governs service of process on corporations and provides two options for service, depending on whether service occurs inside or outside a United States judicial district.  *See* FED. R. CIV. P. 4(h).  To serve a corporation within a United States judicial district, a plaintiff must either: (1) "deliver[] a copy of the summons and of the complaint to an officer, a managing or

general agent, or any other agent authorized by appointment or by law to receive service of process[,]" *id.* at 4(h)(1)(B); or (2) serve the summons and complaint in the same manner as service on an individual, as set out in Rule 4(e)(1), *see id.* at 4(h)(1)(A). Rule 4(e)(1) permits service within a United States judicial district by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" *Id.* at 4(e)(1). To serve a corporation outside a United States judicial district, the plaintiff must follow Rule 4(f). *See id.* at 4(h)(2). In conjunction with Rule 4(h)(2), Rule 4(f) authorizes service on foreign corporations "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[,]" *id.* at 4(f)(1), sets out additional requirements if there is no internationally agreed means of service, and permits service "by other means not prohibited by international agreement, as the court orders[,]" *id.* at 4(f)(2)(A)-(B), (C)(ii), (3).

If the Court determines that service was defective, it "may, but is not required to, dismiss the action. Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Zhang v. Ichiban Grp., LLC*, No. 1:17-CV-148, 2017 WL 5991748, *2 (N.D.N.Y. Dec. 1, 2017) (citation and internal quotation marks omitted).

### 2. *Personal Jurisdiction*

"Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Rule 12(b)(2), . . . the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Burdick v. Oswego Cnty.*, No. 5:15-CV-353, 2015 WL 6554515, *2 (N.D.N.Y. Oct. 29, 2015) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading

6

in good faith legally sufficient allegations of jurisdiction." *Id.* (citing *Metro. Life Ins. Co.*, 84 F.3d at 566). To meet that burden, the "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Id.* (citation and internal quotation marks omitted). "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet this burden." *Id.* (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

**B.      Defendant's Motion to Dismiss for Insufficient Service of Process**

Defendant argues that Plaintiff did not properly effectuate service under either prong of Rule 4(h). *See* Dkt. No. 8-10 at 8. Regarding service within a United States judicial district, Defendant contends that Franklin was not authorized to receive service on Defendant's behalf. *See id.* at 8-13. Regarding service outside a United States judicial district, Defendant argues that Plaintiff is obligated to follow the Hague Convention. *See id.* at 14. Plaintiff argues that its service on Franklin was "at least substantially compliant with Rule 4" because Franklin "appeared to have authority to act on [D]efendant's behalf." Dkt. No. 12-3 at 4-5. Plaintiff also argues that because Defendant now knows about the lawsuit, requiring Plaintiff to adhere to the Hague Convention for international service "would be an empty formality." *Id.* at 18.

   *1. Service Within a United States Judicial District*

Because the attempted service occurred in Virginia, it is evident that Plaintiff attempted to avail itself of Rule 4(h)(1). Defendant argues that service under Rule 4(h)(1) fails because Franklin "is a *former* employee" of non-party Aiger USA, and even during his employment as a sales associate, he "was not authorized or eligible to accept service of process" for any of the at-issue Aiger companies. Dkt. No. 8-10 at 9-10. Plaintiff counterargues that service was proper

because Franklin had *apparent* authority to accept service on Defendant's behalf.  *See* Dkt. No. 12-3 at 3-6.

Rule 4(h)(1)(B) provides for service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  FED. R. CIV. P. 4(h)(1)(B).  Likewise, Rule 4(h)(1)(A), through Rule 4(e)(1), *see id.* at 4(h)(1)(A), permits service in accordance with "state law for serving a summons in an action . . . in the state where the district court is located or where service is made[,]" *id.* at 4(e)(1).  Here, those states are New York and Virginia.  Although Defendant argues that Plaintiff failed to meet both states' applicable service requirements, *see* Dkt. No. 8-10 at 10-13, Plaintiff makes no arguments concerning service under Virginia law, *see* Dkt. No. 12-3 at 3-7 (discussing only the Federal Rules of Civil Procedure and New York's service rules).  Because Plaintiff bears the burden of showing that service was proper, the Court's Rule 4(h)(1)(A) analysis only addresses New York law.

New York's Civil Practice Law and Rules permit service on a foreign corporation[1] through "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).  Most of this language mirrors Rule 4(h)(1)(B), and courts interpret the provisions as "substantively identical."  *Lin v. Quality Woods, Inc.*, No. 17-CV-3043, 2019 WL 1450746, *4 (E.D.N.Y. Jan.

---

[1] C.P.L.R. § 311(a)(1) also permits service on a business corporation through New York's Business Corporation Law.  *See* N.Y. C.P.L.R. § 311(a)(1); N.Y. BUS. CORP. LAW §§ 306 (discussing service of process on foreign corporations authorized to do business in New York), 307 (discussing service of process on foreign corporations not authorized to do business in New York).  Defendant indicates that Aiger AG Switzerland and Aiger Engineering Ltd. are not "registered (authorized) with the New York Secretary of State to do business in New York."  Dkt. No. 8-10 at 11 n.3.  Plaintiff does not contest that point.  Because Plaintiff does not claim to have served the Secretary of State, the designated receiver of process in § 307, service under that provision is not established.

28, 2019) (citing *Cooney v. Barry Sch. of L.*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014); *Avanti Enters., Inc. v. A&T Produce, Inc.*, No. 09-CV-1185, 2010 WL 3924771, *1 (E.D.N.Y. July 21, 2010), *R. & R. adopted*, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010)).  The state rule adds "cashier" and "assistant cashier" to the list of permissible service recipients, which New York courts define as the corporation's "'financial agent . . . who has charge of its funds, and has the right to take charge of such funds to the exclusion of every other person.'"  *Oustecky v. Farmingdale Lanes, Inc.*, 246 N.Y.S.2d 859, 860-61 (Sup. Ct. Special Term 1964) (quoting *Eisenhofer v. New Yorker Zeitung Publishing & Printing Co.*, 91 A.D. 94, 95 (1st Dep't 1904)); *see Weiss v. Glatt Pack Kosher, Inc.*, 138 A.D.2d 591, 591-92 (2d Dep't 1988) (rejecting the argument that a person stationed at a cash register is a "cashier" who can receive service).

Importantly, a person's status as a corporation's employee does not automatically mean the person can receive service on the corporation's behalf.  *See Garcia v. Rebecca Minkoff LLC*, No. 22-CV-1912, 2025 WL 3897903, *6 (S.D.N.Y. Nov. 24, 2025) (citing *Lin v. Yuri Sushi, Inc.*, No. 18-CV-528, 2025 WL 774911, *2 (S.D.N.Y. Mar. 11, 2025); *Quality Woods*, 2019 WL 1450746, at *4).  Rather, service must be made upon an individual "'who operates at [the corporate defendant's] highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise.'"  *Quality Woods*, 2019 WL 1450746, at *5 (collecting cases).  Permitting service upon any "manager," as the term is colloquially used, would expand the rules to permit service upon "any person of suitable age and discretion employed by the defendant corporation."  *Id.* (citation and internal quotation marks omitted).

Plaintiff's argument relies on the proposition that "New York courts construe the term 'managing or general agent' broadly to include representatives who have apparent authority to accept service even if their exact job title is not listed in the statute[,]" and based on Franklin's

online self-representations, service upon him was "at least substantially compliant with Rule 4." Dkt. No. 12-3 at 3-4.  Phrased differently, Plaintiff argues not that Franklin fits within any class of corporate actors mentioned in the governing rules, but rather that he *appeared* to do so. Defendant contends that legal authorities do not support Plaintiff's position.  *See* Dkt. No. 14 at 6. The Court agrees with Defendant.

Plaintiff cites two cases for the proposition that "service on apparent corporate agents" may be effective.  Dkt. No. 13-2 at 5 (citing *Melkaz Int'l Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634 (E.D.N.Y. 1996); *Leo v. Gen. Elec. Co.*, 111 F.R.D. 407 (E.D.N.Y. 1986)).  In both cases, the Eastern District of New York applied § 311 and found proper service where the plaintiffs served the defendant corporations' employees at the companies' facilities.  *See Melkaz*, 167 F.R.D. at 642; *Leo*, 111 F.R.D. at 414.  However, Plaintiff fails to elaborate on the underlying "redelivery" doctrine, which Defendant describes in its reply.  *See* Dkt. No. 14 at 6-9.

Both *Melkaz* and *Leo* cite a New York Court of Appeals case recognizing that service of process on an employee outside the governing rules—who then redelivers the documents to an appropriate corporate actor—may be proper in some circumstances.  *See Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272-73 (1980).  As highlighted in *Melkaz*, "the New York Court of Appeals has found service of process to be valid where 'the process server has *gone to [the corporation's] offices*, made *proper inquiry* of the defendant's own employees, and delivered the summons according to their own directions.'"  *Melkaz*, 167 F.R.D. at 641 (quoting *Fashion Page*, 50 N.Y.2d at 273) (emphasis added).  On the other hand, the *Fashion Page* court explained that "[d]elivering the summons to a building receptionist, not employed by the defendant, without any inquiry as to whether she is a company employee, would not be sufficient.  Such service cannot be upheld even though the receptionist may later deliver the summons to the proper party."

10

*Fashion Page*, 50 N.Y.2d at 273; *see also Breene v. Guardsmark, Inc.*, 680 F. Supp. 88, 90 (S.D.N.Y. 1987) (recognizing *Fashion Page*'s liberal construction of proper service while acknowledging the requirement that the process server go to the defendant corporation's offices and inquire about the appropriate recipient of service).

Plaintiff never alleges that Franklin presently works or previously worked for Aiger Group AG Switzerland. Although Plaintiff's counsel's declaration includes a screenshot of two separate LinkedIn profiles purportedly identifying Franklin as "Sales Director – Americas" for Aiger USA, with a vague description of "[m]anaging USA office and [S]outh American office in Brazil[,]" and "Director Americas" for Aiger Engineering Ltd., Dkt. No. 12-1 at ¶ 15, Plaintiff alleges no facts suggesting those roles authorize Franklin to receive service for those entities or any other Aiger company. The filed affidavit of service characterizes Franklin as an "officer of Aiger[,]" but does not elaborate on how the process server reached that conclusion. Dkt. No. 7. Furthermore, neither the affidavit nor Plaintiff's motion papers give any indication that the process server engaged in the kind of inquiry described in *Fashion Page* that would allow service based on apparent authority and redelivery. It is reasonably clear from the affidavit, however, that the process server did not attempt to serve Franklin at Defendant's headquarters or any facility operated by Defendant. Rather, the affidavit characterizes the Virginia address as a home, *see id.*, and Plaintiff never refutes Defendant's observation that the address is "a single-family residence[,]" Dkt. No. 8-1 at ¶ 8.

Accordingly, the Court rejects Plaintiff's "substantial compliance" argument. Plaintiff has not demonstrated that its attempted service upon Franklin complied with Rule 4(h)(1). At best, Plaintiff alleges facts showing service upon an employee of Defendant's non-party sister corporation at his private home.

11

### 2. *Service Outside a United States Judicial District*

Rule 4(h)(2) permits service outside a United States judicial district through most of the methods prescribed in Rule 4(f).  *See* FED. R. CIV. P. 4(h)(2).  One such method is through "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]"  *Id.* at 4(f)(1).  Plaintiff has not alleged any attempt to serve Defendant outside a United States judicial district, but acknowledges in its cross-motion that "Defendant has a presence in Bulgaria and Switzerland, and ordinarily [P]laintiff would have to resort to Hague Convention service through Switzerland and Bulgaria's Central Authorities."  Dkt. No. 12-3 at 17. In other words, Plaintiff agrees with Defendant that the Hague Convention applies to international service in this case.  *See* Dkt. No. 8-4 (listing members of the Hague Convention, including Bulgaria and Switzerland).  Plaintiff attempts to wave away the use of Hague Convention service by characterizing it as "time-consuming and cumbersome – involving translations into German, French, and/or Bulgarian, transmission of documents abroad, and an uncertain waiting period for confirmation of service."  Dkt. No. 12-3 at 17.  In short, Plaintiff never claims to have attempted international service, and nothing in the record establishes proper service under Rule 4(h)(2).

### 3. *Defendant's Motion to Dismiss as a Waiver of Service*

Plaintiff argues that its defective service on Franklin still "achieved the fundamental purpose of Rule 4: providing the defendant with notice of the claims."  Dkt. No. 12-3 at 6. According to Plaintiff, "Defendant's own actions indicate that it learned of this lawsuit immediately, if not very soon after the service was completed upon Mr. Franklin – so promptly, in fact, that it was able to prepare and file a detailed motion to dismiss by September 30, 2025."  *Id.* Plaintiff contends that Defendant's quick engagement of counsel "plainly shows it is not suffering

12

from lack of notice, but rather attempting to gain a litigation advantage." *Id.* Essentially, Plaintiff urges this Court to treat Defendant's motion to dismiss as a waiver of service. Defendant states that its motion is not a waiver of service and takes the position that "indulg[ing] this argument would be nothing short of judicial repeal of Rule 12(b)(5)—every motion under it would be self-defeating." Dkt. No. 14 at 11. Once again, the Court agrees with Defendant.

Plaintiff cites cases from the District of Vermont and Second Circuit for the proposition that "where a defendant actually receives the summons and complaint, defects in the method of service may be excused, as long as the service was reasonably calculated to reach the defendant." Dkt. No. 12-3 at 6 (citing *Leger v. Dessureault*, 733 F. Supp. 786 (D. Vt. 1990); *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir. 1984)). However, these cases rely on an interpretation of the former Rule 4(c)(2)(C)(ii), which dealt with service by mail and no longer appears in Rule 4. *See* FED. R. CIV. P. 4; *Morse*, 752 F.2d at 37 (characterizing the former Rule 4(c)(2)(C)(ii) as containing "the method of serving process by mail"). In *Morse*, the Second Circuit determined that a defendant's failure to acknowledge mailed service of process would not automatically void service under the former Rule 4(c)(2)(C)(ii). *See Morse*, 752 F.2d at 39-40.

As Defendant points out, we are not dealing with service by mail in this case. *See* Dkt. No. 14 at 11. Defendant also argues that Plaintiff's cited cases are obsolete. *See id.* at 10-11. The Court agrees with Defendant on both points. Another court in this circuit has recognized that *Morse* "was later superseded by 1993 amendments to Rule 4[,]" and by extension, the *Leger* court's reliance on *Morse* is unpersuasive. *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 401 n.7 (S.D.N.Y. 2020). The Court therefore rejects Plaintiff's argument that an approach similar to the one in *Morse* and *Leger* is appropriate here.

13

From a practical standpoint, adopting Plaintiff's argument that a motion to dismiss functions as a waiver of service would undermine Rule 12(b)(5).  That Rule expressly allows parties to move for dismissal on the ground of insufficient service of process.  *See* FED. R. CIV. P. 12(b)(5).  Although a Rule 12(b)(5) defense is waived if not asserted in a party's first responsive pleading or pre-answer motion, *see Cusamano v. Alexander*, 691 F. Supp. 2d 312, 315 n.1 (N.D.N.Y. 2009) (citing FED. R. CIV. P. 12(h)(1)) (other citations omitted), filing a Rule 12(b)(5) motion to dismiss asserts the defense and does not equate to a waiver of service, *see Nath*, 850 F. Supp. 2d at 441 (rejecting the proposition that a defendant's actual notice of an action excuses defective service); *Sung v. DeJoy*, No. 22-CV-7682, 2024 WL 4107212, *12 n.18 (E.D.N.Y. Sept. 5, 2024) (noting that "'it is a well-settled principle of law in this Circuit that merely appearing before the court does not waive the defense of insufficient service of process'") (quoting *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726, 2016 WL 777906, *6 (D. Conn. Feb. 29, 2016)).  To hold otherwise would render the Rule inoperable.  Here, Defendant plainly asserts a Rule 12(b)(5) defense in its pre-answer motion to dismiss, *see* Dkt. No. 8-10 at 1, 8-14, which shows the defense was *not* waived.

Accordingly, the Court finds that Plaintiff did not properly serve Defendant under any subsection of Rule 4(h).

**C.   Personal Jurisdiction Over Aiger Engineering Ltd.**

Proper service is a prerequisite to a court's exercise of personal jurisdiction over a defendant.  *See Omni Cap. Int'l*, 484 U.S. at 104.  Because the Court has determined that no proper service occurred, it declines to opine on whether Plaintiff sufficiently alleged personal jurisdiction over Aiger Engineering Ltd.

**D.   Plaintiff's Cross-Motion for Extension of Time or Alternative Service**

14

Plaintiff cross-moves for leave under Rules 4(m) and 4(f)(3) for an extension of time to re-serve Defendant or to use an alternative service method. *See* Dkt. No. 12-3 at 7-8.

Rule 4(m) requires courts to "extend the time for service for an appropriate period" if the plaintiff shows good cause for its failure to serve. FED. R. CIV. P. 4(m). It does not apply to Rules 4(h)(2) or 4(f). *See id.* This Court has previously recognized that "'[g]ood cause to excuse deficient service generally requires proof of exceptional circumstances that were beyond [the plaintiff's] control.'" *Labombard v. Winterbottom*, No. 8:14-CV-71, 2014 WL 6674629, *3 (N.D.N.Y. Nov. 25, 2014) (quoting *Norwood v. Salvatore*, No. 3:12-CV-1025, 2013 WL 1499599, *5 (N.D.N.Y. Apr. 10, 2013)). "[I]nadvertence, neglect, mistake[,] or misplaced reliance" by the plaintiff's attorney "does not constitute good cause." *Stuart v. Paulding*, No. 1:12-CV-25, 2013 WL 1336602, *3 (N.D.N.Y. Mar. 28, 2013) (citation and internal quotation marks omitted). Courts may, but are not required to, grant discretionary extensions in the absence of good cause by weighing "'justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party.'" *Labombard*, 2014 WL 6674629, at *3 (quoting *Stuart*, 2013 WL 1336602, at *4).

Separately, Rule 4(f)(3), by reference in Rule 4(h)(2), *see* FED. R. CIV. P. 4(h)(2), permits service on a foreign corporation by "means not prohibited by international agreement, as the court orders[,]" *id.* at 4(f)(3). Plaintiff requests permission to serve defense counsel, who are based in the United States, or to serve Defendant's overseas representatives via email. *See* Dkt. No. 12-3 at 12-17. Defendant counterargues that alternative service is improper, and if Plaintiff serves process internationally, it must follow the Hague Convention. *See* Dkt. No. 14 at 11-13. Again, both parties acknowledge that Bulgaria and Switzerland are Hague Convention signatories. *See* Dkt. No. 8-4; Dkt. No. 12-3 at 17.

As summarized by the Supreme Court, the Convention applies "in civil or commercial matters[] where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (citation and internal quotation marks omitted). Although the Supreme Court has recognized that "compliance with the Convention is mandatory in all cases to which it applies," *id.* at 705, "[t]he Convention does not specify the circumstances in which there is 'occasion to transmit' a complaint 'for service abroad[,]'" *id.* at 700. Other courts in this circuit have recognized that "[c]ompliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *SeaCube Containers LLC v. Compass Containers & Shipping Servs. Ltda.*, 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) (quoting *RSM Prod. Corp. v. Fridman*, No. 06-CV-11512, 2007 WL 1515086, *1 (S.D.N.Y. May 24, 2007)) (internal quotation marks omitted); *see In re Advance Watch Co., Ltd.*, 587 B.R. 598, 603 (Bankr. S.D.N.Y. 2018) (citations omitted); *Burda Media*, 417 F.3d at 299-300.

Thus, if Plaintiff serves Defendant's representatives in Bulgaria or Switzerland, the Hague Convention is the default rule.[2] Notwithstanding, Plaintiff seeks permission to serve Defendant's representatives abroad via email. "'The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court.'" *Schluter Sys., L.P. v. Sanven Corp.*, No. 8:22-CV-155, 2023 WL 130888, *2 (N.D.N.Y. Jan. 6, 2023)

---

[2] The Hague Convention does not apply when the recipient's foreign address is unknown. *See Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 168 (2d Cir. 2025) (citation and internal quotation marks omitted). Although Plaintiff attests to researching possible means of service in the United States, *see* Dkt. No. 12-1 at ¶¶ 11-17, Plaintiff does not allege any endeavors to discover Defendant's foreign address or otherwise establish that the address was unknown. A street address in Bulgaria appears on email messages attached to Plaintiff's motion papers, although it is not clear whether that address is a proper service address. *See* Dkt. No. 12-2. Regardless, Plaintiff concedes that the Hague Convention applies to foreign service in this case. *See* Dkt. No. 12-3 at 17.

(quoting *Shanghai Zhenglang Tech. Co., Ltd. v. Mengku Tech. Co., Ltd.*, No. 20-CV-5209, 2020 WL 13280555, *1 (E.D.N.Y. Nov. 18, 2020)).

Addressing a similar issue, the Second Circuit recently found that email service on defendants in China was improper because China had objected to the modes of service set out in Article 10 of the Convention. *See Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 170-72 (2d Cir. 2025) (citation and internal quotation marks omitted). As the Second Circuit summarized, "Article 10(a) stipulates that so long as the 'State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad.'" *Id.* at 170 (emphasis removed). The Second Circuit interpreted "postal channels" to include email and reasoned that an objection to Article 10 constitutes an objection to email service. *See id.* at 170-72. The Court's research indicates that both Bulgaria and Switzerland have objected to the modes of service in Article 10.[3] Accordingly, the Court declines to permit alternative service via email on Defendant's representatives in Switzerland and/or Bulgaria.

Alternatively, Plaintiff seeks permission to serve Defendant's United States-based counsel under Rule 4(f)(3). *See* Dkt. No. 12-3 at 12-13. In support, Plaintiff cites an Eastern District case where service on a foreign corporate defendant's United States-based counsel was permitted. *See*

---

[3] *See Declaration/Reservation/Notification*, HAGUE CONF. ON PRIVATE INT'L L., https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=28&disp=resdn#:~:text=Yes%2C%20the%20Republic%20of%20Bulgaria%20objects%20to,or%20accompanied%20by%20a%20translation%20into%20Bulgarian. (last visited May 1, 2026) ("The Republic of Bulgaria objects to the use of the channels of transmission for service mentioned in Article 10 of the Convention"); *Declaration/Reservation/Notification*, HAGUE CONF. ON PRIVATE INT'L L., https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=424&disp=resdn (last visited May 1, 2026) ("In accordance with Article 21, second paragraph (a), Switzerland declares that it is opposed to the use in its territory of the methods of transmission provided for in Articles 8 and 10").

*id.* at 12 (citing *Long v. MTN Grp. Ltd.*, No. 23-CV-5705, 2024 WL 4664619 (E.D.N.Y. Sept. 30, 2024)). The Eastern District used a two-step discretion analysis, which Defendant cites in its reply papers:

> [C]ourts in this Circuit have often found it appropriate for certain threshold conditions to be satisfied prior to the issue of an alternative-service order, so as to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts. . . . These threshold conditions require (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant[s], and (2) a showing that the circumstances are such that the district court's intervention is necessary.

*Long*, 2024 WL 4664619, at *4 (internal citations and quotation marks omitted); *see* Dkt. No. 14 at 12. Through the two-step analysis, the *Long* court determined that judicial intervention was necessary. *See Long*, 2024 WL 4664619, at *7. The court allowed alternative service because the Chinese Authority had recently refused to cooperate with the plaintiff's attorneys' attempts at Hague Convention service on the same defendants in other matters. *See id.* at *6-7. The Southern District of New York has also recently relied upon this approach. *See, e.g.*, *I.S.T. N. Am., LLC v. Trelleborg Pipe Seals Milford, Inc.*, No. 25-CV-8349, 2026 WL 322913, *4, *6 (S.D.N.Y. Feb. 5, 2026) (acknowledging the validity of and need for this approach, even though Rule 4(f)(3) does not expressly require it) (citations omitted); *Agrana Fruit U.S., Inc. v. Ingredientrade Inc.*, No. 23-CV-10147, 2025 WL 3039929, *1-3 (S.D.N.Y. Oct. 31, 2025) (using the two-step approach and determining that alternative service was appropriate under the circumstances). The question of whether to permit alternative service is a highly fact-specific one. *See In re GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. 262, 266-67 (S.D.N.Y. 2012) (allowing alternative service on United States-based counsel where the request was precipitated by the defendant's company withholding his service address).

Although Plaintiff argues that service on defense counsel "will clearly satisfy due process because it will undeniably notify [D]efendant of the suit[,]" Dkt. No. 12-3 at 13, Plaintiff fails to make any compelling argument for the necessity of judicial intervention.  Plaintiff contends that alternative service would be "especially sensible" in this case because using the Hague Convention "could easily take many months" and "would be an empty formality" after the instant motion practice.  *Id.* at 17-18.  Plaintiff even argues that requiring it "to start over with foreign service would only serve to reward [D]efendant's obstruction and postpone the inevitable."  *Id.* at 18.  This argument is unpersuasive because Defendant was within its rights to file a Rule 12(b)(5) motion after Plaintiff failed to effectuate proper service.  Plaintiff repeatedly cites the risk of further delay and inconvenience as a reason to allow alternative service, but neglects to acknowledge that its defective service is what caused the delay up to this point.  Allowing Plaintiff to bypass the multiple service options available under the Federal Rules of Civil Procedure—for no reason other than its displeasure with the Hague Convention and failure to identify a proper recipient of service in the United States—would inappropriately undermine Rule 12(b)(5) in this instance.  Accordingly, the Court denies Plaintiff's request for leave to serve defense counsel.  For the same reasons, the Court finds Plaintiff has not shown good cause for an extension of time to serve domestically under Rule 4(m), and declines to order a discretionary extension.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 8) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for extension of time or alternative service (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice for improper service**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  May 5, 2026
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge